# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JERALD BOITNOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRINKER INTERNATIONAL, INC. d/b/a CHILI'S® GRILL & BAR, and ERJ DINING IV, LLC, d/b/a CHILI'S GRILL & BAR<br><br>Defendants. | Case No. |

## NATIONWIDE CLASS ACTION COMPLAINT

Plaintiff, Jerald Boitnott ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Brinker International, Inc., doing business as Chili's® Grill & Bar, and, ERJ Dining IV, LLC, doing business as Chili's® Grill & Bar, ("Defendants" or "Chili's") for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 12181 *et seq.* (the "ADA") and its implementing regulations, averring as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights class action on behalf of all others similarly situated against Defendants for violations of Title III of the ADA and its implementing regulations in connection with Defendants' failure to provide and ensure equal access for individuals with mobility disabilities who patronize Defendants' restaurants ("Defendants'

1

Properties" or "Defendants' Restaurants").

2. Despite passage of the ADA more than twenty-five years ago, to this date, Defendants' Properties are not fully accessible to persons with mobility disabilities. Defendants have discriminated, and continue to discriminate, against Plaintiff, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations at Defendants' Restaurants by failing to provide accessible dining areas and failing to remove architectural barriers, where such removal is readily achievable.

3. Defendants have also failed to make reasonable modifications to their policies, practices, and procedures that are necessary to provide their goods, services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals, Defendants subject Plaintiff and those similarly situated to discrimination, exclusion, and unequal treatment in violation of the ADA.

4. Defendants fail to provide individuals with mobility disabilities the most integrated setting appropriate for them within their restaurants by providing unequal, different, and separate benefits and by segregating and separating individuals with disabilities from individuals without disabilities. Specifically, Defendants fail to provide individuals with mobility disabilities the opportunity to choose the type of table to sit at and where to sit in a dining area through the placement, orientation, and use of inaccessible dining surfaces, thereby providing Plaintiff and those similarly situated the opportunity to

participate in and benefit from Defendants' goods, services, facilities, and accommodations in a manner that is not equal to the experience that is afforded to other individuals without disabilities.

5. Defendants will continue discriminating unabated unless and until enjoined as Plaintiff requests. Accordingly, Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendants from continuing their discriminatory conduct, including an order directing Defendants to make readily achievable alterations to their facilities to remove physical barriers to access and make their facilities fully accessible to and independently usable by people with disabilities to the extent required by the ADA; an order requiring Defendants to make all reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; and a declaration determining that Defendants' policies and practices of discrimination result in a violation of Title III of the ADA and its implementing regulations; an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and any other such relief that this Court deems just and proper.

## THE PURPOSE OF THE ADA

6. Congress passed the ADA, in part, because it found that "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination… continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

7. Congress also found that "individuals with disabilities continually encounter

various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities". 42 U.S.C. § 12101(a)(5)

8. When the ADA was signed into law by President George H.W. Bush, he declared: "Together, we must remove the physical barriers we have created and the social barriers that we have accepted. For ours will never be a truly prosperous nation until all within it prosper."[1]

9. For more than twenty-five years, the ADA has been the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

10. Title III of the ADA and its implementing regulations broadly protect the

---

[1] EEOC.gov, Remarks of President George Bush at the Signing of the Americans with Disabilities Act, available at: https://www.eeoc.gov/eeoc/history/35th/videos/ada_signing_text.html

rights of individuals with disabilities to independently and equally access places of public accommodation.

11.     The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

## THE ADA AND ACCESSIBLE DINING SURFACES

12.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

13.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or

accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

14. Public accommodations are required to provide their goods, services, facilities, and accommodations "in the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B).

15. The Department of Justice defines the "most integrated setting" as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible."[2]

16. In line with the ADA's integration requirement, the ADA also requires public accommodations to design and construct facilities to be readily accessible to, and independently usable by, individuals with disabilities – in other words, a facility's access and usability must be "ready" for an individual with a disability. 42 U.S.C. § 12183(a)(1).

17. When a facility is altered in a manner that affects or could affect its usability, the facility must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

18. The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

---

[2] https://www.ada.gov/olmstead/q&a_olmstead.htm

19. Facilities that are newly constructed or altered must comply with either the 1991 Standards or the 2010 Standards. 28 C.F.R. § 36.406 establishes the circumstances that determine which ADAAG applies to newly constructed and altered facilities subject to 28 C.F.R. §§ 36.401 or 36.402: (1) newly constructed and altered facilities shall comply with the 1991 Standards if the date when the last application for a building permit is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010 (28 C.F.R. § 36.406(a)(1)); (2) newly constructed and altered facilities shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012 (28 C.F.R. § 36.406(a)(2)); and (3) newly constructed and altered facilities shall comply with the 2010 Standards if the date when the last application for a building permit is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012 (28 C.F.R. § 36.406(a)(3)).

20. The 1991 Standards set forth express requirements for restaurants with respect to the accessibility of dining counter surfaces. Specifically, "Where food or drink is served at counters exceeding 34 inches (865 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches (1525 mm) in length minimum shall be provided in compliance with §4.32 or service shall be available at accessible tables in the same area." 1991 Standards § 5.2.

21. The dining surface accessibility requirement was modified in the 2010 Standards to provide: "Where dining surfaces are provided for the consumption of food or drink, *at least 5 percent* of the seating spaces and standing spaces at the dining surface shall comply with §902." 2010 Standards § 226.1 (emphasis added). The 2010 Standards no longer provide an exception if service is available at accessible tables in the same area as an inaccessible dining surface.

22. Section 902 provides that the top of a dining surface shall be 28 inches minimum and 34 inches maximum above the floor, and provide a clear floor space positioned for a forward approach with appropriate knee and toe clearance. 2010 Standards §§ 902.2-3.

23. Further, dining surfaces that are required to comply with Section 902 "shall be dispersed throughout the space or facility containing dining surfaces. . . ." 2010 Standards § 226.2.

24. "Dining surfaces" explicitly includes "bars, tables, lunch counters, and booths." 2010 Standards § 902.1 - Advisory.

25. When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation *shall* remove architectural barriers in existing facilities . . . where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added); *see also* 42 U.S.C. § 12182(b)(2)(A)(iv) (the failure to remove architectural barriers, where such removal is readily achievable, constitutes discrimination).

26. In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

## JURISDICTION AND VENUE

27. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

28. Personal jurisdiction exists for Defendants because Defendants own, operate, lease, and/or control multiple restaurants located in Minnesota.

29. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

30. Plaintiff Jerald Boitnott, at all times relevant hereto, is and was a resident of St. Paul, Minnesota.

31. Plaintiff, as a result of a mobility disability, uses a wheelchair for mobility and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

32. Plaintiff is both a tester in this litigation and a consumer who wishes to access Defendants' goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d

447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

33.   Defendant Brinker International, Inc. is a Delaware corporation headquartered at 6820 LBJ Freeway, Dallas, Texas 75240.

34.   Defendant Brinker International, Inc. owns, develops, and franchises the Chili's® Grill & Bar restaurant brand. Defendant controls the design and physical characteristics of its restaurants.

35.   Defendant ERJ Dining IV, LLC is a Kentucky Limited Liability Company that is headquartered at 3309 Collins Lane, Louisville, Kentucky 40245. ERJ Dining IV, LLC owns and operates Chili's franchises.

**FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE**

36.   Defendants own, operate, lease, and/or control Chili's restaurants throughout Minnesota and the United States.

37.   Defendant ERJ Dining IV, LLC operates approximately nine Chili's franchises in the state of Minnesota and approximately seventy Chili's franchises nationally.

38.   As part of these operations, Defendants serve food and/or drinks at the bar areas of their restaurants.

39. Within the applicable limitations period, Plaintiff patronized Defendants' Restaurants, located at 1800 Beam Avenue, Maplewood, MN 55109 and 7801 Normandale Blvd, Bloomington, MN 55435.

40. Plaintiff desired to be served at Defendants' Restaurants' bar dining area, and, more specifically, desired to be served at and use the bar-top dining surfaces at Defendants' Restaurants; however, Defendants have failed to provide accessible seating at the bar-counter dining surfaces for Plaintiff and others similarly situated to utilize.

41. Defendants' Restaurants also did not have accessible seating in the bar's lounge area.

42. On Plaintiff's behalf, an investigation of multiple locations owned, operated, leased, and/or controlled by Defendants confirmed that other of Defendants' Restaurants in Minnesota also have a bar dining surface that is not accessible to patrons who use wheelchairs or scooters for mobility, and do not provide for accessible seating in the same area as the bar. The configuration and design of Defendants' Restaurants follows a mandatory common design and construction plan, and all of Defendants' Restaurants have the same inaccessible features identified in this Complaint. Defendants' inaccessible restaurants include but are not limited to:

    a.    4000 Vinewood Lane, Plymouth, MN 55442;

    b.    1840 County Rd B2, Roseville, MN 55113;

    c.    14161 Aldrich Avenue S, Burnsville, MN 55337;

    d.    1800 Beam Avenue, Maplewood, MN 55109; and,

    e.    7801 Normandale Blvd, Bloomington, MN 55435.

43. Defendants' policy and practice of failing to provide individuals with mobility disabilities accessible dining surfaces or accessible seating in its bar dining areas is discriminatory, segregationist, and in violation of the ADA.

44. Though Plaintiff is serving as a tester in this case, Plaintiff would like to patronize Defendants' Restaurants in the future and be served at the bar; however, the lack of accessible seating at the bar's dining surface has, and does, deter Plaintiff from patronizing Defendants' Restaurants.

45. Plaintiff intends to continue to test Defendants' Restaurants.

46. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendants' policy and practice of failing to provide accessible dining areas to persons with disabilities.

## CLASS ALLEGATIONS

47. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure and on behalf of himself and the following class:

> All individuals who use wheelchairs or scooters for mobility and who have been, or in the future will be, denied the full and equal enjoyment of bar counter and/or bar area dining services offered to patrons at Defendants' Restaurants because of the lack of accessible bar counter dining surface seating at those restaurants.

48. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

12

49. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

50. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' goods, services and facilities due to the discriminatory conduct described above.

51. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

52. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION

## Violations of 42 U.S.C. §§ 12181, *et seq.*

53. Plaintiff incorporates by reference each and every allegation contained in the previous paragraphs.

54. Plaintiff brings this claim individually and on behalf of the defined putative class of individuals similarly situated.

55. Plaintiff is an individual with a mobility disability and uses a wheelchair for mobility. Plaintiff, accordingly, is an individual with a disability pursuant to the ADA, in that Plaintiff suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105.

56. Defendants are a public accommodation under the ADA. 42 U.S.C. § 12181(7).

## Failure to Provide an Accessible Facility

57. The ADA prohibits designing and constructing facilities for first occupancy after January 16, 1993 that are not readily accessible to, and independently usable by, individuals with disabilities when it is structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

58. The ADA also requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

59. Defendants provide bar counter dining surfaces in their restaurants, at which Defendants provide the service of food and drink for customer consumption.

60. For Defendants' Restaurants that were required to be constructed in compliance with the 1991 Standards, Defendants' bar counter does not comply with the 1991 Standards, because:

   a. The counter exceeds 34 inches in height;

   b. Defendants do not provide a portion of the main counter which is 60 inches in length that complies with Section 4.32 of the 1991 Standards; and

   c. Defendants do not provide service at accessible tables in the same area as the bar counter dining surface.

61. For Defendants' Restaurants that were required to be constructed in compliance with the 2010 Standards, Defendants' bar counter does not comply with the 2010 Standards, because it does not provide for five percent of the seating spaces and standing spaces at the bar counter that comply with Section 902 of the 2010 Standards; indeed, none of the seating and/or standing spaces at the bar counter comply with Section 902.

## Failure to Remove Architectural Barriers

62. The ADA prohibits failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

63. Defendants have the financial resources to remove the architectural barriers at issue – namely, the inaccessible bar counter – and such removal is and was readily achievable for Defendants.

64. Defendants have possessed sufficient control and authority to remove the architectural barriers and modify their dining surfaces to comply with the 2010 Standards, but Defendants have not removed such impediments and have not modified their dining surfaces. Instead, Defendants have intentionally maintained their restaurants to be inaccessible and have refrained from making alterations to comply with the Standards.

### Denial of "Full and Equal" Enjoyment and Use

65. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

66. Defendants have discriminated and continue to discriminate against Plaintiff and others similarly situated by denying "full and equal" enjoyment and use of the goods, services, facilities, privileges, advantages, and accommodations of Defendants' Restaurants during Plaintiff's visit and each incidence of deterrence.

### Failure to Provide the Most Integrated Setting

67. Public accommodations are required to provide their goods, services, facilities, and accommodations "in the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B).

68. Defendants have failed to provide the most integrated setting appropriate to the needs of Plaintiff and those similarly situated by limiting the areas and options at which Plaintiff may choose to eat and/or drink, resulting in a setting that segregates and separates

individuals with mobility disabilities, preventing them from interacting with non-disabled individuals to the fullest extent possible.

### **Failure to Modify Existing Policies, Practices, and Procedures**

69. By failing to provide accessible dining surfaces, Defendants have engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination by failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

70. Defendants have no policy, practice, or procedure, or else Defendants failed to create, implement, and maintain policies, practices, and procedures, to ensure individuals with mobility disabilities are not denied the opportunity to have the same dining experience at their restaurants as individuals without disabilities, resulting in a denial of the opportunity for individuals with mobility disabilities to have full and equal access to all of the goods, services, privileges, advantages, and accommodations that make up Defendants' Restaurants.

71. Defendants have no policy, practice, or procedure, or else Defendants failed to create, implement, and maintain policies, practices, and procedures, to ensure compliance at Defendants' Properties with ADA barrier removal requirements.

72. Defendants have further failed to create, implement, and maintain policies, practices, and procedures to comply with ADA building design regulations and standards.

73. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of Defendants' goods, services, facilities, privileges, advantages, and accommodations.

74. Defendants' ongoing and continuing violations of Title III have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiff and those similarly situated.

75. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants failed to take action reasonably calculated to ensure that Defendants' bar counter dining surfaces were fully accessible to, and independently usable by, individuals with mobility disabilities;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendants to take all steps necessary to bring their bar counter dining surfaces into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that those bar counter dining surfaces are fully accessible to, and independently usable by, individuals with disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendants

have adopted and are following an institutional policy that will in fact cause Defendants to remain fully in compliance with the law.

 c. An Order certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

 d. Payment of costs and reasonable attorneys' fees as provided for by law; and

 e. Such other additional or alternative relief as the Court finds just and proper.

Dated: March 5, 2019      Respectfully submitted,

**THRONDSET MICHENFELDER, LLC**

*/s/ Patrick W. Michenfelder*
Patrick W. Michenfelder (#024207X)
Chad Throndset (#0261191X)
Cornerstone Building
One Central Avenue West, Suite 203
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
pat@throndsetlaw.com
chad@throndsetlaw.com

**CARLSON LYNCH, LLP**

R. Bruce Carlson
Kelly K. Iverson
Bryan A. Fox
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243 (Tel.)
bcarlson@carlsonlynch.com
kiverson@carlsonlynch.com
bfox@carlsonlynch.com
(Pro Hac Vice Application Forthcoming)

*Attorneys for Plaintiff*

19